### McLOUGHLIN et al. v. BIEBER et al.

(Supreme Court, Appellate Division, First Department. June 9, 1899.)

1. PARTNERSHIP—DISSOLUTION—DISCHARGE OF RETIRING PARTNER.
Creditors were notified of the dissolution of a firm, and that the remaining partners would continue the business and "liquidate all obligations," and subsequently took the notes of the remaining partners for a balance due for goods sold the firm. *Held*, in an action for the balance, that the acceptance of the notes did not discharge the retiring partners, since, there being no notice to the creditors of an agreement that the remaining partners assumed the debts of the firm, the retiring partners remained, as to them, principals, and not sureties for their payment.

2. SAME—ACCEPTANCE OF NOTES FROM REMAINING PARTNER.
The taking of such notes did not discharge the original debt, because, there being no special agreement to receive them in payment, they would be assumed to have been taken as collateral or as conditional payment.

3. SAME—PAYMENT—EVIDENCE.
Where a creditor, with knowledge of the dissolution of a firm, but without notice that the remaining partner had agreed to assume payment of the indebtedness, accepted notes of the remaining partner, evidence that the creditor made the proposition that such remaining partner "should give him notes, so as to make it easier for the payment" is insufficient to support the conclusion that there was an agreement between the parties that the new notes were to be taken in payment.

Rumsey, J., dissenting.

Appeal from trial term, New York county.

Action by John McLoughlin and others against Leopold Bieber and others. From a judgment for defendant Leopold Bieber, and an order denying a motion for a new trial (56 N. Y. Supp. 490), plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and McLAUGHLIN, JJ.

Ralph S. Rounds, for appellants.
Louis Z. Kinstler, for respondent.

O'BRIEN, J. The action was brought to recover from the three defendants, as co-partners, formerly composing the firm of L.

Bieber, Son & Co., the sum of $611.25, alleged to be due and unpaid for goods sold to the firm. The goods were furnished previous to January 1, 1898, at which time $2,188.54 was due. On January 3, 1898, the plaintiffs were notified by J. Bieber and J. Greenwald that:

"The co-partnership heretofore existing under the name of L. Bieber, Son & Co. has this day been dissolved by mutual consent. Joseph Bieber and Jacob Greenwald will continue to carry on the business of the late firm, as L. Bieber's Son & Co., and will liquidate all obligations."

Thereafter seven notes were given to the plaintiffs, which were signed by the new firm, five of which, aggregating $1,577.26, were duly paid; but two notes—one dated February 10, 1898, for $300, and the other February 15, 1898, for $311.28, due, respectively, June 10 and July 15, 1898—were dishonored. For these two notes a judgment was obtained by the plaintiffs against the defendants Joseph Bieber and Jacob Greenwald, which was returned unsatisfied, and the plaintiffs now attempt to hold the defendant Leopold Bieber, alleging that the notes were given only as collateral security. At the trial, Joseph Bieber testified that, at an interview had after the dissolution of the old firm, he stated to the plaintiffs that he and Jacob Greenwald would continue the business, and do the best they could; that the plaintiffs suggested the giving of notes, to which he assented; that nothing was said about the notes being collateral security; and that Mr. Leopold Bieber knew nothing of the giving of the notes. With respect to this interview, one of the plaintiffs testified that Joseph Bieber reiterated the statement that was contained in the formal notice received, that Leopold Bieber had retired from the concern:

"He didn't tell me that the new firm had assumed the debts of the old. I was not aware of the terms on which the dissolution took place. Merely that Mr. Bieber had retired. We took these seven notes from Mr. Joseph Bieber as determining the time when payments were to be made on this account."

Both parties moved for a direction of a verdict, and the court directed one in favor of the defendant Leopold Bieber,—the only person defending,—and to this direction the plaintiffs' counsel excepted. The plaintiffs then moved to set aside the verdict on the judge's minutes, and for a new trial upon exceptions taken, and bcause the verdict was contrary to the evidence and to the law, which motion was denied.

The defendant contended below, as here—First, that the claim was paid and satisfied by acceptance of the note; second, that the recovery of judgment and its proof in bankruptcy constituted a merger; and, third, that the plaintiffs had notice that the new firm assumed the debts of the old firm, and that, by the acceptance of the new notes, Leopold Bieber, the retiring partner, was discharged. As the last was the ground which influenced the learned trial judge in directing a verdict for the defendant, it will be the first taken up for discussion. In his opinion, he says:

"The firm dissolved, Leopold Bieber going out, and the other two remaining in. The plaintiffs were notified of the dissolution, and of the fact that Joseph Bieber and Jacob Greenwald would continue to carry on the business of the late

firm, * * * and that they would liquidate all the obligations of the old firm. This dissolution by operation of law made Joseph Bieber and Jacob Greenwald principal obligors, and Leopold Bieber, the retiring partner, surety for them."

And he held that the acceptance thereafter of the promissory notes payable at a future day, without the consent of the surety, effectually discharged him from all responsibility.

The plaintiffs made no request to go to the jury; and if, upon any state of the facts warranted by the testimony, the decision of the court can be maintained, it is our duty to maintain it. This brings us to a consideration as to what inferences are to be drawn from the testimony. If the conclusion of the trial court can be sustained,— that, from the notice sent, or as the result of the interview, the plaintiffs were notified that there was an agreement between the partners by which the remaining partners assumed and would liquidate all the obligations of the old firm,—then, clearly, the judgment was right. We cannot, however, find any support for this conclusion in the evidence. The notice of dissolution was merely that the remaining partners would be liquidating partners, and that they were to act in getting together the assets and paying the debts, and, after all this was done, to account to the retiring partner for his share of the profits. But this notice did not say that the remaining partners had assumed all the obligations of the old firm; nor is there any evidence that any such agreement, as between the partners, was made. In the absence of such an agreement, all the partners continued to be liable as principal debtors. The mere dissolution of a firm does not constitute those who continue the principal debtors, and the one retiring a surety; but such a relation is created only by an agreement between the partners themselves, by which, upon the assumption of the debts, the person so assuming becomes the principal debtor, and the other partner the surety, and creditors who have knowledge of such an agreement must thereafter treat the partners in view of their changed relations. That the basis of the new relation of principal and surety does not depend on the mere dissolution of the partnership, but does upon a definite and legally binding contract by which the continuing partners agree with the retiring partner to pay the old debts, has been established by many cases, of which the leading one is Palmer v. Purdy, 83 N. Y. 144. In that case—

"Of the four tenants, all liable for the rent, two (Gill and Purdy) left the firm and the premises, and two (Cassidy and Flanigan) remained; having, by a valid agreement with the outgoing partners, assumed and agreed to pay the rent thereafter to accrue. If the fact of that agreement had been fairly communicated to the creditor, the right of Gill and Purdy to be treated as sureties would have been established. But no such communication is shown. The only fact proven is that Cassidy informed the plaintiff's agent that Gill and Purdy were going out, and Cassidy and Flanigan were to remain and pay the rent. No agreement by which they were bound to do so, made between themselves and Purdy and Gill, was in any manner communicated to plaintiff or his agent."

And in discussing the law of that case it was said:

"It is settled that one of several original debtors can so contract with the others for their assumption and payment of the common debt as to acquire the rights of a surety, upon knowledge of the new arrangement being communicated to the creditor. Millerd v. Thorn, 56 N. Y. 402; Colgrove v. Tallman, 67 N. Y.

95; Calvo v. Davies, 73 N. Y. 216. This is not a rule which in any manner assumes to alter or modify the original contract or the common liability. That remains as an unchanged fact, and may be enforced as freely and perfectly as ever against all the debtors. The change effected is that, as between themselves, one becomes a surety for the rest, because of a valid agreement by which they become primarily liable for the debt, and bound to pay it in exoneration of their associate; and, this fact being fairly and fully brought to the knowledge of the creditor, he is bound to respect the rights of the debtor who has become a surety, and acquired the right to protection as such. When, therefore, by the agreement of the debtors among themselves, it is sought to invest one or more of them with new equitable rights outside of the original contract by notice to the creditor of the later arrangement, it is not too much to require that such notice shall be definite and distinct, and so given as to fully and fairly apprise the creditor of the new agreement in fact made, and the changed attitude of the debtor claiming the rights of a surety."

This case has been consistently followed in the court of appeals and in this court; and in Bank v. Underwood, 2 App. Div. 345 (37 N. Y. Supp. 838), the syllabus correctly states the rule therein laid down, as follows:

"If an outgoing partner of a firm seeks to relieve himself from his liability as a principal debtor, and to assume that of a surety, he must not only prove that the creditor had notice of the dissolution of the firm, but he must show that the creditor had knowledge of the arrangement by which the continuing partner received all the assets and assumed all the debts of the old firm, and the notice to the creditor must be definite and distinct."

We have already adverted to the fact that there was no sufficient testimony upon which the conclusion could be based of the presence of the elements requisite to establish the relation of principal and surety as between the partners, because there was no evidence that any agreement for the assumption of debts by the continuing partners was made. And, secondly, if there was any such agreement, there was no definite and distinct notice of its existence brought home to the creditor. The burden of showing that there was such an agreement, and that notice of it was given to the plaintiffs, was upon the defendant; and we do not think that, upon any view to be taken of the testimony, this burden was sustained. The plaintiffs therefore were at liberty to treat all the partners as principal debtors, and the taking of the notes from two of them did not discharge the original debt, because, in the absence of a definite agreement to receive them in payment, they will be assumed to have been taken as collateral or as conditional payment; and the only effect might be to extend the time for the enforcement of the original obligation, which, upon the conclusion we have reached, that the retiring partner was not a surety, would not affect or discharge his liability on the original debt. Some of the cases go so far as to hold that even an express agreement to take the note of a debtor or one of joint debtors in absolute and final payment of an open account is nudum pactum, as being without consideration. This question is discussed in Cole v. Sackett, 1 Hill, 515. We are, of course, now speaking of the note of one or more of the debtors, and not of a case in which the note of a third party is given and accepted in payment, or where a note is taken in payment of a prior note which is surrendered; for there is authority for the proposition that such a surrender may be a good

consideration. Schmidt v. Livingston, 16 Misc. Rep. 554, 38 N. Y. Supp. 746. Apart, however, from this discussion, we do not think that the defense that the notes were taken in payment of the old account was sustained. Nor did the court below base its decision upon that point, but, rather, on the one which we have already considered.

With regard to the question of merger or res adjudicata the same remarks are applicable. It is evident they were neither considered nor weighed by the learned trial judge; and, though the answer contains a reference to the obtaining of the judgment, we do not think it sufficiently pleaded the defense of merger, and it is therefore doubtful, to say the least, if that question is involved in the case. If, however, we regard it as sufficiently pleaded, then we are brought back to the consideration whether the new notes were given or accepted as collateral, or in payment and discharge of the original indebtedness, the burden of establishing which was on the defendants. We have already referred to the plaintiffs' evidence as to the circumstances under which the notes were given; and, in that connection, while Joseph Bieber testified that in respect thereto nothing was said about their being taken as collateral security, he does say that one of the plaintiffs made the proposition that he "should give him notes, so as to make it easier for the payments." This evidence would not support the conclusion that there was an agreement between the parties that the new notes were to be taken in payment.

Without discussing the questions further, we think, in view of the error into which the learned trial judge fell in disposing of the main question upon which his decision rested, the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur, except RUMSEY, J., dissenting.